## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**JARELL DAVIS TERRY**                                              **PETITIONER**

### No. 4:20-cv-01440 JM/PSH

**DEXTER PAYNE, Director,**                                         **RESPONDENT**
**Arkansas Division of Correction**

### FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

Petitioner Jarell Davis Terry ("Terry") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Terry is currently in the custody of the Arkansas Division of Correction ("ADC") after a Drew County jury found him guilty first-degree murder, aggravated robbery, and theft of property. Terry, deemed an habitual offender, was sentenced to two terms of life imprisonment and 15 years. The trial court ran the life sentences consecutively. On direct appeal, Terry argued three grounds for reversal: insufficient evidence due to his lack of intent and acting under duress; trial court abuse of discretion in denying Terry's motion to question a juror who allegedly nodded her

head toward the victim's family; and violation of a state statute regarding the jury's request for copies of the jury instructions and additional verdict forms. The Arkansas Supreme Court remanded for further development of the record regarding Terry's third claim for relief. Following remand, Terry's convictions were affirmed. *Terry v. State*, 2020 Ark. 202. Terry has not filed a petition for Rule 37 postconviction relief.

Terry filed this federal habeas corpus petition on December 3, 2020, advancing four claims for relief:

(1)    Insufficiency of the evidence;

(2)    Double jeopardy/due process;

(3)    Juror misconduct; and

(4)    Various due process claims.[1]

Respondent Dexter Payne ("Payne") opposes the relief sought by Terry, and contends that claims 2, 3, and 4 are not properly before this Court because they are procedurally defaulted. In a February 23, 2021, Order, the Court notified Terry of his opportunity to explain why those claims should be considered on their merits. Docket entry no. 9. Terry has responded to the Court's Order. Docket entry nos. 10 and 11. The parties agree that Terry's first claim was fully raised in state court. The Court will first address claim 1, then turn to the remaining claims advanced by Terry.

---

[1]These allegations include claims that the trial court relied on inconsistent statements and improperly admitted into evidence a photo from the victim's Facebook page, the trial court allowed the prosecutor to lead a witness and slander Terry, the prosecutor spoke with a witness during a court recess, and Terry was incorrectly sentenced as an habitual offender since his prior felonies were not violent.

## Claim 1 – Insufficiency of the evidence

The challenge to the sufficiency of the evidence was pursued on direct appeal in state court. The Arkansas Supreme Court summarized the factual background and the merits of Terry's assertions as follows:

> Terry's convictions and sentences stem from the November 14, 2017 theft, robbery, and murder of Christon Sheets. The State charged Terry and his accomplice, Dominze Figures, with first-degree murder, aggravated robbery and theft of property. [footnote omitted] At Terry's jury trial, State's witness Mistie Pamplin testified that she was Sheets's girlfriend and the two lived together in Wilmar. Pamplin testified that on November 14, 2017, Sheets drove to McGee, picked up Figures and Terry and brought them back to their house. Pamplin testified that Sheets had approximately one pound of marijuana and two guns at the house. Pamplin testified that the group spent the day smoking marijuana and playing dominoes and video games. Pamplin testified that there was a bag of marijuana on the top bunk bed and some in a jar on the floor. Pamplin further testified that while they were smoking, Terry and Figures were holding Sheets's guns—Terry held the black one and Figures held the brown one. While standing in the doorway and each holding one of Sheets's guns, Figures pointed the gun at Pamplin and Sheets and said, "[Y]ou know what this is[.]" Pamplin stated that Terry was also pointing a gun at Pamplin and Sheets when this statement was made. Pamplin testified that Sheets jumped up and began fighting with Terry. Pamplin further stated that as the two began fighting, she ducked her head and heard a gunshot. Pamplin looked up to see that Sheets had been shot, but she did not see who had pulled the trigger. Pamplin testified that Sheets was on the floor and asked Pamplin to take him to the hospital and Terry responded, "[B]itch, you better not." Pamplin testified that the two men took Sheets's guns and "the bag of weed off the top bunk" and fled the scene. Sheets died from his gunshot injuries.
> Dr. Stephen Erickson, Deputy Chief Medical Examiner at the Arkansas State Crime Lab, testified that Sheets's cause of death was due to gunshot wounds to his abdomen and pelvis. At the close of the State's evidence, Terry moved for a directed verdict on each count. The circuit court denied Terry's motion.
> Terry testified in his own defense. Terry testified that he and Figures were simply going to Sheets's house to hang out for the weekend and there was no discussion of an illegal plan. The group arrived at Sheets's house at around 1:00 p.m., smoked weed, played dominoes and video games, and ate pizza. Terry testified that later that evening,

3

approximately two minutes before the shooting, he picked up one of the rifles while Figures had the other rifle. However, Terry testified that he gave the rifle back to Sheets, who placed the rifle in his own lap. Terry stated that prior to the shooting, Figures was acting different. Terry further stated that at the time of the shooting, he did not have the rifle in his hand. Terry testified that when Figures stood up and said, "you know what this is," Sheets jumped up and tackled Terry, and the two began wrestling. When Sheets jumped up, the gun fell to the floor. Sheets pinned Terry to the ground, picked up the gun, and pointed it at Figures. Terry heard gunshots and realized that he had been shot in the ankle. Terry testified that Figures instructed him to grab the marijuana and the gun. Terry complied and took the marijuana and the gun as they left Sheets's home. Terry testified that Pamplin was screaming, and he told her to shut up, but he denied pointing a gun at her and did not say "bitch you better not." Terry testified that he and Figures fled and got into a getaway car driven by Figures's girlfriend, which Terry claimed he knew nothing about.

At the close of the evidence, Terry renewed his motions for directed verdict on all counts, which was again denied except that the circuit court granted the motion as to the intentional-killing formulation of first-degree murder. Terry was found guilty of first-degree murder, aggravated robbery, and theft of property. The jury sentenced Terry to two terms of life imprisonment and one term of fifteen years' imprisonment and recommended that the terms run consecutively. The circuit court entered its judgment and commitment order consistent with the jury's recommendation except that it ran the fifteen-year term concurrent with the second life sentence. . .

For his first point on appeal, Terry argues that the circuit court erred in denying his motion for directed verdict. On appeal, Terry argues that there was insufficient evidence to sustain his convictions of first-degree murder, aggravated robbery, and theft of property. On appeal, a motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *Reynolds v. State*, 2016 Ark. 214, 492 S.W.3d 491. This court views the evidence in the light most favorable to the State and affirms if there is substantial evidence to support the verdict. *Id*. Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. Id. This court does not weigh the evidence presented at trial or assess the credibility of the witnesses, because those are matters for the fact-finder. Id. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. Id. Only evidence supporting the verdict will be considered. *Leaks v. State*, 345 Ark. 182, 45 S.W.3d 363 (2001).

With these standards in mind, we turn to Terry's sufficiency argument.
A person commits murder in the first degree if

[a]cting alone or with one (1) or more other persons, he commits or
attempts to commit a felony, and in the course of and in the furtherance
of the felony or in immediate flight therefrom, he or an accomplice
causes the death of any person under circumstances manifesting extreme
indifference to the value of human life[.]

Ark. Code Ann. § 5-10-102(a)(1)(B) (Supp. 2019). Further, we have
"consistently defined circumstances manifesting extreme indifference to
the value of human life as deliberate conduct that culminates in the death
of another person. *Jefferson v. State*, 372 Ark. 307, 276 S.W.3d 214
(2008); *Wyles v. State*, 368 Ark. 646, 249 S.W.3d 782 (2007);
*Branstetter v. State*, 346 Ark. 62, 57 S.W.3d 105 (2001); *Coulter v.
State*, 343 Ark. 22, 31 S.W.3d 826 (2000); *Davis v. State*, 325 Ark. 96,
925 S.W.2d 768 (1996). We have also stated that extreme indifference
requires actions that evidence a mental state on the part of the accused
to engage in some life-threatening activity against the victim. *Perry v.
State*, 371 Ark. 170, 264 S.W.3d 498 (2007)." *Price v. State*, 373 Ark.
435, 439, 284 S.W.3d 462, 465–66 (2008).
With regard to aggravated robbery, a person commits aggravated robbery
if he or she commits robbery as defined in § 5-12-102, and the person is
armed with a deadly weapon. Ark. Code Ann. § 5-12-103(a)(1). A
person commits robbery if, with the purpose of committing a felony or
misdemeanor theft, he or she employs or threatens to immediately
employ physical force on another person. Ark. Code Ann. §
5-12-102(a)(3). "A criminal defendant's intent or state of mind is seldom
capable of proof by direct evidence. *Robinson v. State*, 353 Ark. 372,
108 S.W.3d 622 (2003). Intent to commit a robbery may be inferred
from the facts and circumstances of the case. *Jenkins v. State*, 350 Ark.
219, 85 S.W.3d 878 (2002)." *Jefferson v. State*, 359 Ark. 454, 464, 198
S.W.3d 527, 532–33 (2004). Further, theft of property occurs when a
person takes unauthorized control over the property of another person
with the purpose of depriving the owner of the property. Ark. Code Ann.
§ 5-36-103(a)(1). Finally, an accomplice is one who directly participates
in the commission of an offense or who, with the purpose of promoting
or facilitating the commission of the offense, aids, agrees to aid, or
attempts to aid the other person in the planning or committing of the
offense. See Ark. Code Ann. § 5-2-403(a)(2).
Based on the evidence presented at trial, we hold that sufficient evidence
supported Terry's conviction for first-degree murder arising out of the
shooting of the aggravated-robbery victim, Sheets. Pursuant to Pamplin's
testimony, when Figures pointed his gun at Sheets and Pamplin and

stated, "[Y]ou know what this is," Terry also pointed his gun at Pamplin and Sheets. After Sheets was shot and he asked Pamplin to take him to the hospital, Terry told Pamplin, "[B]itch, you better not." Finally, Figures and Terry fled the scene with Sheets's guns and marijuana. Based on the above facts, it was clear that Sheets was killed in the furtherance of the aggravated robbery. Despite Terry's testimony that he acted under duress because he feared Figures, the jury was free to accept or reject his testimony. See *Reynolds, supra*. Viewing the evidence in the light most favorable to the State, we hold that substantial evidence supports Terry's first-degree-murder, aggravated-robbery, and theft-of-property convictions. In sum, the evidence supports a conclusion that Sheets's death occurred during the commission of an aggravated robbery and theft under circumstances manifesting extreme indifference to the value of human life. Therefore, we hold that Terry's convictions are supported by sufficient evidence. Accordingly, we affirm the denial of his motions for directed verdict as to all three counts.

*Terry v. State*, 2020 Ark. 202, 1–6.

When the state court has ruled on the merits of a petitioner's claims, a writ of habeas corpus may not be granted unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1), (2). Here, Terry does not plead or prove that the Arkansas court ruling of sufficient evidence supporting his convictions was contrary to, or involved an unreasonable application of, clearly established federal law. Although the state Supreme Court did not specifically cite federal law, that failure is not problematic as neither the court's reasoning nor result contradicts federal law. *See Cox v. Burger*, 398 F.3d 1025, 1030 (8th Cir. 2005). The applicable federal law requires the court to ask if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) [emphasis in original]. The Arkansas Supreme Court's ruling that Terry's convictions were supported by sufficient evidence is consistent with, and a reasonable application of the *Jackson v. Virginia* standard.

Terry has also not shown that the adjudication of the claim by the Arkansas Supreme Court resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Terry points to his defense of duress, emphasizing he acted only out of fear of what Figures would do if he resisted.[2] The jury was not obligated to accept Terry's testimony, particularly when Mistie Pamplin's testimony painted a different picture, with Terry and Figures both pointing guns at her and Sheets, and with Terry and Figures both leaving the scene with Sheets' guns and his marijuana. Pamplin's testimony that Terry warned her not to call for assistance was also at odds with Terry's duress defense. The credibility of witnesses was a jury question, and Terry's insistence that an error occurred in this regard does not make it so. The jury's rejection of his duress argument was not an unreasonable determination of the facts in view of the trial evidence.

Having carefully reviewed the trial record, the Court finds the evidence meets and exceeds the requirements of *Jackson v. Virginia*. There is no merit in Terry's challenge to the sufficiency of the evidence.

**Claims 2, 3, and 4 – Double jeopardy/due process, juror misconduct, and**

---

[2]Terry testified that he thought Figures was "plotting on me." Docket entry no. 7-1, page 269.

**various due process claims.**

Payne contends these claims are not properly before this Court due to Terry's failure to raise them in state court. Terry does not dispute that these claims were not properly raised and adjudicated in state court. He asserts that failure to raise the claims should be excused due to ineffective assistance of counsel at trial and on appeal. However, "[a] claim of ineffective assistance of counsel must be presented to the state court as an independent claim before it may be used to establish cause for procedural default or denominated as a ground for habeas relief." *Leggins v. Lockhart*, 822 F.2d 764, 768 n.5 (8th Cir. 1987). Because Terry did not pursue Rule 37 postconviction relief, no claims of ineffective assistance were advanced in state court. Terry's claims of ineffective assistance of counsel therefore may not be used in this case to establish cause for procedural default or as a ground for habeas relief.

The record shows no valid reason for Terry's failure to utilize the state court process in raising these claims. In other words, he does not establish "cause" for his failure to assert the known grounds and "prejudice" resulting from that failure. *See also, Clark v. Wood*, 823 F.2d 1241, 1250-51 (8th Cir. 1987); *Messimer v. Lockhart*, 822 F.2d 43, 45 (8th Cir. 1987). *See also*, *Smith v. Murray*, 477 U.S. 527 (1986), and *Murray v. Carrier*, 477 U.S. 478 (1986).

Terry could sidestep the cause and prejudice requirement if he could show his actual innocence. The Supreme Court elaborates on actual innocence:

> To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial. Because such

evidence is obviously unavailable in the vast majority of cases, claims
of actual innocence are rarely successful.

*Schlup v. Delo*, 513 U.S. 298, 324 (1995).  To succeed on an actual innocence claim,

Terry "must show that it is more likely than not that no reasonable juror would have

found petitioner guilty beyond a reasonable doubt."  513 U.S. at 327.  Here, Terry

revisits the trial testimony and urges different conclusions should have been reached.

He does not point to new, reliable evidence that was not presented at trial.  As a result,

claims 2, 3, and 4 are not properly before the Court via the actual innocence gateway.

Terry attempted to raise claim 3, juror misconduct, on direct appeal.  The

Arkansas Supreme Court determined the claim was not preserved for appeal,

reasoning as follows:

> For his second point on appeal, Terry argues that the circuit court abused
> its discretion in not allowing him to question a juror regarding her head
> nod toward the victim's family. After the jury returned its verdicts during
> the sentencing phase of trial, but prior to the jury being discharged,
> defense counsel told the circuit court that during the guilt phase, Terry
> saw a juror nodding at the victim's family before the jury announced its
> verdicts. Defense counsel stated that he wanted to question the juror, and
> the circuit court denied this request. The circuit court explained that this
> issue was first brought to the court's attention during the sentencing
> phase and that it would not allow the jurors "to be questioned to go
> behind their verdicts." The circuit court discharged the jury. After the
> jury was discharged, Terry testified that he saw the juror look at the
> victim's family and nod her head, as if to assure the family, "[Y]es, we
> got him." The juror did not speak to anyone. Terry testified that he told
> his attorney about this as soon as it occurred, which was before the
> circuit court received the guilty verdicts. The circuit court then
> questioned two bailiffs, but neither saw the juror look or nod at the
> victim's family. Both the prosecutor and the judge stated that they did not
> see the juror nod at anyone but that they were not paying attention to the
> jury when it entered the courtroom. On appeal, Terry argues that even if
> this issue is not preserved, we can address it under our Rule 4-3(i)
> review.
> In response, the State argues that because this argument was not raised

at the first opportunity, Terry is barred from raising it on appeal. With regard to Rule 4-3(i), the State properly points out that the Rule does not mandate plain-error review. The record demonstrates that at trial, Terry did not raise this issue at the first opportunity, and therefore, it is not preserved for our review. Further, while we are required by Rule 4-3(i) to review the record for error in life and death cases, that review presupposes that a proper objection was made at trial. Miller v. State, 942 S.W.2d 825, 328 Ark. 121 (1997) (explanation of the scope of our review under the Rule's previous designation of Ark. Sup. Ct. R. 4-3(h)). Here, the alleged juror misconduct occurred after the jury had reached its verdicts in the guilt phase. However, Terry did not notify the court until the jury was deliberating Terry's sentence, and the issue was not objected to on a timely basis and was not preserved for review. Despite preservation, Terry contends that the juror may have known the victim's family and may have prejudiced him. Terry makes bare allegations and offers no evidence to support these allegations. "Following allegations of juror misconduct, the moving party bears the  burden of proving that a reasonable possibility of prejudice resulted from any such juror misconduct. Dillard v. State, 313 Ark. 439, 855 S.W.2d 909 (1993); Larimore v. State, 309 Ark. 414, 833 S.W.2d 358 (1992). We will not presume prejudice in such situations. Id." State v. Cherry, 341 Ark. 924, 930, 20 S.W.3d 354, 358 (2000). Here, the alleged nod occurred just as the guilt-phase verdicts were being rendered. Terry does not allege misconduct during deliberations. Additionally, Terry offers no corroborating evidence to support his allegations. "[T]his court has repeatedly held that the issue of witness credibility is for the trial judge to weigh and assess. Green v. State, 334 Ark. 484, 978 S.W.2d 300 (1998); Myers v. State, 333 Ark. 706, 972 S.W.2d 227 (1998). Accordingly, this court will defer to the superior position of the trial court to evaluate the credibility of witnesses. Humphrey v. State, 327 Ark. 753, 940 S.W.2d 860 (1997)." Id. at 930–31, 20 S.W.3d at 358. Based on the record before us, Terry has failed to demonstrate that juror misconduct occurred and that he was prejudiced. Accordingly, we are not persuaded by Terry's argument and affirm the circuit court's order on this point.

*Terry v. State*, 2020 Ark. 202, 7–9.

Thus, the state court found Terry failed to timely object and preserve for review his claim of juror misconduct.  Further, the state court found Terry failed to establish juror misconduct or prejudice.  Payne correctly notes that the Arkansas Supreme

Court's decision to address the merits of this claim does not cure the procedural default. *Reed v. Harris,* 489 U.S. 255, 264 n. 10 (1989).  Even if this were not the case, Terry would face the daunting challenge of demonstrating that the trial court's "asserted error was so gross, *Taylor v. Minnesota*, 466 F.2d ll19, ll21 (8th Cir. l972), *cert. denied*, 4l0 U.S. 956 (l973), conspicuously prejudicial, *United States ex rel. Cannon v. Maroney*, 373 F.2d 908, 9l0 (3rd Cir. l967), or otherwise of such magnitude that it fatally infected the trial and failed to afford the petitioner the fundamental fairness which is the essence of due process. *Lisenba v. California*, 3l4 U.S. 2l9 (l94l)." *Maggitt v. Wyrick*, 533 F.2d 383 (8th Cir. l976).  See also *Kennedy v. Kemma*, 666 F.3d 472, 481 (8th Cir. 2012).  The Court has reviewed the trial transcript carefully, and finds implausible any suggestion that the trial court erred in a fashion implicating Terry's due process rights.  Terry, the only observer of the alleged head nods, belatedly speculated on what the conduct could mean.  There was no denial of due process even if this claim were not procedurally barred.

**Conclusion:** Claim 1, advanced in state court, should be dismissed for the reasons set forth above.  Claims 2, 3, and 4 should be dismissed as procedurally barred.  Claim 3 is without merit even if not barred, and should also be dismissed on that basis.  For the foregoing reasons, the petition for writ of habeas corpus should be dismissed and the relief requested denied.

Pursuant to 28 U.S.C. § 2253 and Rule 11 of the Rules Governing Section 2554 Cases in the United States District Court, the Court must determine whether to issue a certificate of appealability in the final order. In § 2254 cases, a certificate of

appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). The Court finds no issue on which petitioner has made a substantial showing of a denial of a constitutional right. The certificate of appealability should therefore be denied.

IT IS SO RECOMMENDED this 5th day of May, 2021.

_____

UNITED STATES MAGISTRATE JUDGE